**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ROGER C. HOCKER,**

      Plaintiff,

vs.	Civ. No. 07-1281 ACT

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand ("Motion")  filed June 20, 2008.  Doc. 19.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is well taken.

**I.  PROCEDURAL RECORD**

Plaintiff, Roger C. Hocker, filed his applications for Social Security Disability Insurance Benefits and Supplemental Security Income on August 4, 2005. Tr. 59,63. He is alleging a disability since November, 2003 due to bipolar disorder, post-traumatic stress disorder and hepatitis C.  *Id.* His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on August 9, 2006.  Tr. 332.  At the hearing, Plaintiff was represented by counsel.  On October 17, 2006, the ALJ issued an unfavorable decision finding that

Plaintiff's substance abuse disorder is a contributing factor material to the determination of disability.  Tr. 32.

On November 30, 2007, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 5-7.  The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on December 20, 2007.

Plaintiff was born on May 4, 1975.  Tr. 49.   Plaintiff has a tenth grade education, a GED, and spent 2 ½ years in the Marines from which he was given a dishonorable discharge.  Tr. 262, 305.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process

ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; and 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III.  MEDICAL HISTORY

On May 24, 2004, Plaintiff was seen by the University of New Mexico's Psychiatric Emergency Services.  Tr. 287-88.  He told the healthcare provider that he had been arrested for burglary last week and wanted treatment for his drug abuse.

On May 17, 2005, Plaintiff underwent a "General Mental Health Consult" at the Veteran's Affairs Hospital.  Tr. 187.  He said he had attempted suicide in the past:  tried to jump off a bridge at 16 years old; and he took some pills at age 27 years old.  He said both were "gestures." *Id.*  He stated that he drinks a six pack one to two times per month.  He was taking Xanax[1] and Methocarbamol.[2]

---

[1] This drug is used to treat anxiety and panic disorders.  *www.webmd.com.*

[2] This medication is a muscle relaxer.  *www.webmd.com.*

On May 17, 2005, Plaintiff was evaluated for the "SUD Program." Tr. 183. He was assessed for his addiction to heroin and crack. Tr. 184. He first started using heroin the previous year and had been using crack for 10 years. He stated that he had been in de-tox programs on three previous occasions: as an 11 year old at Good Shepard for "huffing;" as a teen for 1½ years for "weed;" and last year in San Diego for crack. He further stated that his longest period of abstinence was one day. He said he could not hold a job "because I have poor impulse control." He goes on $1200 crack binges.

On August 22, 2005, Plaintiff was seen by the VA for a refill of Xanax. Tr. 298-99. He stated that he has lost two jobs because of physical alternations. Tr. 299. He also stated he had been diagnosed with hepatitis C on May 11, 2005.[3]

On June 13, 2005, he was seen by Capt. John D. Stanson of the 377th Medical Group Life Skills Support Center at Kirtland Air Force Base. Tr. 241. The record states that Plaintiff is a patient of the "Life Skills Support Center." Capt. Stanson made the following diagnosis:

| Axis I. | 296.80 Bipolar Disorder per pt HX |
|---|---|
| | R/O 304.80 Polysubstance Dependence |
| | R/O 309.81 Posttraumatic Stress Disorder |
| Axis II. | 799.9 Diagnosis Deferred |
| Axis III. | No diagnosis. |

*Id.*

On September 21, 2005, Plaintiff underwent a consultative examination with Charles D. Mellon, M.D., Diplomat of the American Board of Psychiatry and Neurology. Tr. 260-64. The length of the exam was 45 minutes and Dr. Mellon reviewed four pages of notes from the VA. At

---

[3]Plaintiff does not dispute the ALJ's finding that he is not impaired from his hepatitis C infection. Tr. 30.

the time of the exam, Plaintiff was being treated with Lexapro[4] and Xanax. In the history taken from Plaintiff and his wife, Dr. Mellon noted cyclothymia,[5] polysubstance abuse and cluster B personality disorders. Dr. Mellon's notes contain the following diagnostic impression:

| | |
|---|---|
| AXIS 1: | Cyclothymic Disorder |
| | Polysubstance Abuse induced psychotic disorder. |
| AXIS II: | Antisocial Personality Disorder |
| | Borderline Personality Disorder |
| AXIS III: | Hepatitis |
| AXIS IV: | legal problems, unemployed, marital problems |
| AXIS V: | 49 [6] |

Comment: the claimant presents with a complicated and chaotic history of behavioral problems extending from childhood to the present in an unbroken chain. He has a mood disorder, the diagnosis of bipolar is possible, but the history is complicated and the mood problem is atypical. He has a cyclical component, but it is more consistent with cyclothymia in its description. He has a history of polysubstance abuse and onset of hallucinations only in the last year consistent with drug induced hallucinosis. He also meets the criteria for two cluster B personality disorders, which are the central source of most of his behavioral problems. The diagnosis of PTSD is problematic in the midst of his other diagnoses.

Tr. 263.

Dr. Mellon found that some of Plaintiff's abilities were mildly or moderately limited due to personality disorders. Tr. 264. He also found that his ability to work would improve "significantly if the substance abuse stopped." *Id.*

---

[4]Lexapro is an antidepressant medication used to treat a variety of conditions, including depression and other mental/mood disorders. *www.mdweb.com.*

[5]Cyclothymia (cyclothymic disorder) is a relatively mild mood disorder. In cyclothymic disorder, moods swing between short periods of mild depression and hypomania (elevated mood). The low and high mood swings never reach the severity of major depression or mania. Cyclothymia is a "bipolar-like" illness. People with cyclothymic disorder have milder symptoms than in full-blown bipolar disorder. *www.webmd.com.*

[6]This number is a Global Assessment of Functioning ("GAF") which is a subjective determination based on a scale of 1-100 of "the clinicians judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., 2000) 32. "A GAF score of between 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning."

On September 23, 2005, J. LeRoy Gabaldon, Ph.D. completed a Psychiatric Review Technique Form ("PRTF") and a Residual Functional Capacity Assessment-Mental ("RFC-Mental"). Tr. 265-78, 279-81. The PRTF states that Plaintiff has an organic mental disorder, substance induced, evidenced by "[p]erceptual or thinking disturbances." Tr. 266. It also states that Plaintiff has cyclothymia, an affective disorder and a borderline anti-social personality disorder. Tr. 268, 272. Based on his review of the medical records, he found that Plaintiff had a mild degree of limitation in restriction of activities of daily living and in maintaining concentration, persistence or pace and a moderate degree of limitation in maintaining social functioning. Tr. 275. He found there was insufficient evidence of repeated episodes of decompensation. *Id.* In the RFC-Mental, Dr. Gabaldon found that Plaintiff was not significantly limited or, at the most, moderately limited in all categories. Tr. 279-80. He found that Plaintiff was able to work with some limitations. Tr. 281.

On September 31, 2005, Plaintiff was seen by the University of New Mexico's Psychiatric Emergency Services. The triage note states that Plaintiff was not taking his prescribed Effexor,[7] 37.5 mg. Tr. 284.

On October 6, 2005, Plaintiff was seen at the VA hospital complaining that his medications were not working and his depression was not improving. Tr. 293-94. He had stopped Xanax two weeks ago and was taking Lexapro daily. Dr. Laura Ulibarri discontinued the Lexapro and prescribed Effexor. The records indicate he was a "no show" for his appointments scheduled in November and December of 2005.

---

[7] This medication is anti-depressant used to treat a variety of conditions, including depression and other mental/mood disorders. *www.webmd.com.*

On December 28, 2005, Plaintiff underwent a consultative evaluation by John R. Vigil, M.D. Tr. 304-07.  He stated he was currently on Risperdal[8] and Prozac and that he had no symptoms from his hepatitis C.  He further stated he had three accidental overdoses of heroin in May, June and July but had not used since then.  Dr. Vigil assessed Plaintiff with bipolar disorder, PTSD and hepatitis C.  Tr. 306.  He found that the Plaintiff had no physical limitations and was "minimally to only mildly impaired by his psychiatric complaints...." Tr. 307.

On January 6, 2006, Scott Walker, M.D. completed a PRTF assessing Plaintiff from November 16, 2003 to January 6, 2006.  Tr. 312-25.  He found that  Plaintiff met Listing 12.09B, substance addiction disorder and also had an affective disorder.  The affective disorder was "Bipolar Disorder (in context of polydrug abuse)."  Tr. 315.  He found that Plaintiff had a mild degree of limitation in restriction of activities of daily living; moderate degree of limitation in maintaining social functioning; marked degree of limitation in maintaining concentration, persistence, or pace; and had three episodes of decompensation, each of extended duration.  Tr. 322.  In his notes, Dr. Scott makes the following observations:

> As noted by his wife he works well until he takes heroin or crack.  Multiple accidental ODs (clearly indicates there are NOT suicide attempts) within the past year which would probably be disruptive to the work environment nor be tolerated for absences in a competetive (sic) work setting.  Not compliant with prescribed treatment.
> Incarceration likely.
> Meets 12.9B  DA&A IS material.

Tr. 324.

---

[8]Risperidone is used to treat certain mental/mood disorders (schizophrenia, manic phase of bipolar disorder, irritability associated with autistic disorder).  *www.webmd.com.*

On June 20, 2006, the notes reflect that Plaintiff was calling for refills of Wellbutrin[9] and Resperodol. Tr. 325O.

## IV. DISCUSSION

      a.    *Alcoholism or Drug Addiction.*

The Contract with America Advancement Act of 1996 provides that "[a]n individual shall not be considered to be disabled [under either Title II or XVI of the Social Security Act]....if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C §§ 423(d)(2)(C), 1382c(a)(3)(J); accord 20 C.F.R. § 416.935. If an ALJ finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether....drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935. The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1).

A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability. First, the ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied. 20 C.F.R. § 416.935(b)(2)(i). If the claimant

---

[9] This medication is used to treat depression. *www.webmd.com.*

would still be considered disabled due to his remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits.  20 C.F.R. § 416.935(b)(2)(ii).

In *Salazar v. Barnhart,* 468 F.3d 615, 623 (10th Cir. 2006), the Tenth Circuit Court of Appeals discussed the two-step analysis when mental impairments are involved.  The opinion noted a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction.]" *Id*.  The Court of Appeals noted that the teletype:

> ....stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [drug and alcohol addiction] is *not* a contributing factor material to the disability determination.

*Id.* (emphasis in original).

The teletype also states:

> The most useful evidence that might be obtained in [cases of multiple mental impairments combined with drug and alcohol addiction] is that relating to a period when the individual was not using drugs/alcohol.  Of course, when evaluating this type of evidence, consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence.

*Id.*

The teletype further indicates that the report of a medical or psychological consultant could be the basis for a conclusion that drug and alcohol addiction is material to the determination that a claimant is disabled if the consultant is able to separate the effects of mental impairments from those of substance abuse and project what limitations would remain if the claimant stopped using drugs or alcohol.  The commissioner's teletype instructs that where the record is devoid of any medical

or psychological report, opinion, or projection as to the claimant's remaining limitations if he stopped using drugs or alcohol, an ALJ should "find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability." *Id.* at 624.

In finding that the Plaintiff would not be disabled if he stopped abusing drugs, the ALJ relied on the findings of Drs. Gabaldon, Mellon and Vigil. Tr. 29. For the following reasons, the Court finds that these reports do not provide substantial evidence for the ALJ's finding nor does the record as a whole provide substantial evidence for the ALJ's finding.

Dr. Gabaldon reviewed Plaintiff's medical records but did not examine the Plaintiff. The ALJ states that Dr. Gabaldon found that the Plaintiff "has mild limitations under Parts B1 and B3 and moderate difficulties in maintaining social functioning pursuant to part B2 in the absence of substance abuse...." *Id*. The basis of the ALJ's finding that Dr. Gabaldon found these limitations "in the absence of substance abuse" is not clear from the record. Dr. Gabaldon did not address Listing 12.09 in his PRTF. Tr. 265. He states in his report that Plaintiff "continues to engage in substance use...." Tr. 281. If the ALJ is relying on Dr. Gabaldon's report as evidence of limitations when Plaintiff is abstaining from substance abuse, Dr. Gabaldon's report is not substantial evidence because the record is unclear as to whether Plaintiff abstained from substance abuse for any length of time.

Dr. Mellon examined the Plaintiff but reviewed only four pages of notes from the VA hospital. The ALJ correctly noted nothing in Dr. Mellon's "report suggests that the claimant was under the influence of alcohol or drugs at the time of the examination." Tr. 29. However, Dr. Mellon's report makes it clear he did not examine the Plaintiff during a period of abstinence. Dr. Mellon notes in his report that "the claimant admits to periodic use of many substances ranging from

alcohol and marijuana to IV heroin over the years. He is still using. His wife says that it is an 'off and on' kind of thing and that he never seems to get addicted." Tr. 261. Dr. Mellon specifically found that Plaintiff was suffering from drug induced hallucinations with a onset in the last year. Tr. 263. The evidence relied on by the ALJ does not support a finding that this examination was performed during a period of abstention.[10]

Finally, the ALJ relied on Dr. Vigil's consultative examination report "that the claimant had not abused heroin since July of that year and was currently minimally to mildly impaired by his psychiatric complaints...." Tr. 29. Counsel for Plaintiff objected to Dr. Vigil's findings on the grounds that Dr. Vigil is a medical doctor and not a psychiatrist. Tr. 307, 334. At the hearing the ALJ responded:

> Well, they would certainly get no weight from me although he's already in trouble from other people that I've, you're not the only counsel who has made remarks about Dr. Vigil's techniques, and in fact, I understand it's under investigation....So, I will give it the weight that I feel it deserves under the circumstances.

Tr. 334-35.

The ALJ did not explain in his decision why he relied on Dr. Vigil's psychiatric findings. Nor did the ALJ explain why he chose to rely on Dr. Vigil's report that Plaintiff had not abused heroin since July when Dr. Mellon's report states that Plaintiff is "still using." The Court is aware that Dr. Mellon may not have meant heroin but the record is not clear and the ALJ does not state his reasons.

---

[10]The Court also notes that the ALJ improperly relied on selected parts of Dr. Mellon's report and ignored other parts. *Carpenter v. Astrue*, 537 F.3d 1264 C.A.10 (Okla.),2008 ("We have held that '[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" (citation omitted).

11

Furthermore, the ALJ erred in failing to discuss the evidence that Plaintiff had not abstained from substance abuse for any length of time. As an example, in Dr. Walker's report, he noted the following: "Claims abstinent 1 year (directly contradicted by the MER)."[11] Tr. 423. *Chifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (ALJ must discuss significantly probative evidence he rejects.) (*citing Zblewski v. Schweiker*, 732 F.3d 75, 79 (7th Cir. 1984)("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.").

      b.    *Listing of Impairments.*

In determining whether a claimant's impairment meets or equals a Listed Impairment at step three, an ALJ must identify the relevant listings considered and set out specific findings and reasons for finding whether plaintiff's impairments meet or equal those listings. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir.1996). Where an ALJ fails to identify the relevant listings or to set out specific findings and reasons, such a "bare conclusion is beyond meaningful judicial review." *Id*. at 1009.

The ALJ found that Plaintiff has the following severe impairments: "hepatitis C seroposititivity, depressive vs. bipolar disorder, anti-social vs. borderline personality disorder, and alcoholism and polydrug abuse....". Tr. 28. When, as in the instant case, there is evidence of mental impairments which allegedly prevent the Plaintiff from working, the ALJ must follow a specific procedure for evaluating mental impairments set forth in the applicable regulations and listing of impairments and document the procedure accordingly. 20 C.F.R. §404.1520a; *Cruse v. U.S. Dept. of Health & Hum. Serv*. 49 F.3d 614, 616 (10th Cir. 1995). This procedure first requires

---

[11] It also appears from the decision that the ALJ "credited" Drs. Walker and Gabaldon's opinions, both non-examining physicians more than Dr. Mellon who performed a consultative evaluation. Tr. 28-29. Again, the ALJ needed to state his reasons because more weight is generally given to the opinion of an examining physician than a nonexamining physician. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1).

the ALJ to determine the presence or absence of certain medical findings pertaining to the Plaintiff's ability to work, sometimes referred to as "Part A" criteria. The ALJ must then evaluate the degree of functional loss resulting from the impairment, using "Part B" criteria.

The ALJ's analysis did not follow the required procedure. The ALJ discussed two listings in his decision: 12.09, Alcoholism and Drug Abuse and 5.05, Chronic liver disease. He failed to analyze Listing 12.08, Personality Disorders even after finding that in the "absence of substance abuse, the claimant's limitations are the result of his personality disorder...." Tr. 28. This is error.

As these two errors require a remand, the Court does not address Plaintiff's remaining arguments.

        c.     *Award of Benefits.*

Plaintiff asks the Court to remand for a payment of benefits. Whether to award benefits is a matter within the Court's discretion. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). The relevant factors to consider include the length of time the matter has been pending and whether or not "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Salazar,* 468 F.3d at 626 (citation omitted).

On the record before the Court, the Court finds that a remand would not be an exercise in futility. Additional fact-finding as to Plaintiff's arrest for residential burglary is required as Plaintiff would not be entitled to benefits during any time of incarceration. 42 U.S.C. § 402(x)(1)(A)(l); Tr. 28, 288. In addition, the record states that Plaintiff was a patient of the "Life Skills Support Center" and that [s]eparate records are maintained in that clinic." Tr. 241. Other than an "admit" note, these medical records are not in the administrative record before the Court. Tr. 238. Moreover, the ALJ's

analysis contained error.  Correct application of the law was missing and must be addressed on remand.

      **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted and that this matter is remanded to the Commissioner for proceedings consistent with this opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**